IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **ROYAL TEN CATE USA, INC., et al.** | § | |
| | § | |
| v. | § | A-11-CA-1057 LY |
| | § | |
| **TTAH TRUST CO. LIMITED, et al.** | § | |

**ORDER**

Before the Court are: Plaintiffs' Motion to Conduct Jurisdictional Discovery (Clerk's Doc. No. 29) filed April 11, 2012; Defendant TT Investors' Response to Plaintiffs' Motion for Jurisdictional Discovery (Clerk's Doc. No. 47) filed May 7, 2012; and Plaintiffs' Reply in Support of Motion to Conduct Jurisdictional Discovery (Clerk's Doc. No. 50) filed May 24, 2012. Having reviewed the motion, response, reply, and entire case file, the Magistrate Judge enters the following Order.

**I. Background**

This case was filed on December 9, 2011. Plaintiffs filed their Amended Complaint (Clerk's Doc. No. 39) on April 19, 2012. In their Amended Complaint, Plaintiffs, Royal Ten Cate USA, Inc., a Delaware corporation, Koninklijke Ten Cate N.V., a Dutch company, and Ten Cate UK Limited, a British company (collectively, "TenCate") allege a breach of certain warranties contained in a confidential Acquisition Agreement entered into on February 4, 2009, by TenCate and Defendants TTAH Limited[1] f/k/a Tiger Turf Americas Holdings Limited ("TTAH"), a New Zealand company, and TT Investors Limited f/k/a Tiger Turf International Limited ("TTI"), also a New Zealand company (collectively, "Defendants").

---

[1] In their Original Complaint, Plaintiffs named TTAH Trust Company Limited as a Defendant, but substituted TTAH Limited as the proper party in their Amended Complaint.

Pursuant to the Acquisition Agreement, TenCate agreed to purchase from Defendants the shares in four operating subsidiaries, including TigerSports Americas Inc., ("TigerSports"), a Texas corporation with its principal place of business in Austin, Texas. Under the Acquisition Agreement, Defendants gave a number of warranties pertaining to the business of TigerSports, including whether the business faced any contingent liabilities. TenCate alleges that Defendants did not disclose contingent liabilities that Defendants either knew or should have known about.

Defendants have moved to dismiss TenCate's claims based upon FED. R. CIV. P. 12(b)(1) and 12(b)(2). Defendants assert that the Court cannot properly assert personal jurisdiction over the defendants TTI and TTAH because they are foreign corporations with no business presence in Texas and passive stockholders of TTAH. TenCate alleges that TTI and TTAH are subject to personal jurisdiction in Texas under theories of both specific and general jurisdiction, and advance various arguments in support of their claim that this Court has personal jurisdiction over Defendants based upon minimum contacts with the forum. These arguments include: that the parties entered into a contract contemplating performance in Texas; that the Acquisition Agreement required the parties to undertake obligations in Texas related to the sale of TigerSports; that Defendants loaned money to a Texas resident so that he could purchase a minority interest in TigerSports; that the Acquisition Agreement required the Defendants to make certain warranties about TigerSports; and that the Defendants asserted direct control over the business operations and affairs of TigerSports, making them "alter egos" of TigerSports for jurisdictional purposes. Plaintiffs move to conduct limited jurisdictional discovery in order to further investigate Defendants' jurisdictional contacts with Texas. Defendant TTI opposes the Motion claiming that the record is fully developed and that Plaintiffs

cannot advance an "alter ego" theory of jurisdiction because they have failed to plead this theory in their Amended Complaint and because TTI never owned stock in TigerSports America.

## II. Analysis

A court may grant jurisdictional discovery when the plaintiff makes a preliminary showing of jurisdiction. *See Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)). A preliminary showing is less than a prima facie showing; if the plaintiff made a prima facie showing, jurisdictional discovery would be unnecessary. When the lack of personal jurisdiction is clear, discovery is also unnecessary. *Kelly v. Syria Petroleum Dev. B. V.*, 213 F.3d 841, 855 (5th Cir. 2000) (internal quotation marks omitted). "If the plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained." *Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010) (internal quotation marks and alterations omitted).

After careful consideration of the record, the Court concludes that Plaintiffs have made a sufficient preliminary showing of personal jurisdiction sufficient to allow jurisdictional discovery. Plaintiffs have identified various issues relevant to personal jurisdiction on which they wish to inquire further, and additional information would enhance the Court's jurisdictional analysis. To support the request to conduct jurisdictional discovery, the Plaintiffs offer evidence that the Defendants share common ownership and that Graham Ellery served as managing director of TTI, sole director and president of TTAH Limited, and president of TigerSports. Contrary to TTI's contentions, Plaintiffs are not required to allege an alter ego theory in their Complaint in order to

advance an alter ego theory for jurisdictional purposes. Plaintiffs' alter ego argument is not a claim seeking to impose liability on TTI, but rather contends solely that the theory may be used to establish jurisdiction over TTI. Also, TTI's argument that TTI cannot be the alter ego of TSA because it did not own stock in TSA is without merit. In the jurisdictional context, federal courts "[g]enerally . . . demand proof of control by [one corporation] over the internal business operations and affairs" of another corporation to make the other its agent or alter ego, and hence "fuse the two together for jurisdictional purposes." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983) (collecting cases). In determining whether a plaintiff asserting personal jurisdiction has overcome the presumption of corporate separateness, federal courts consider a variety of non-exhaustive factors, including common stock ownership. *Id.* However, the ultimate issue is one of control, and stock ownership is merely a factor to be considered, and is not determinative.

### III. Order

Accordingly, Plaintiffs' Motion to Conduct Jurisdictional Discovery (Clerk's Doc. No. 29) is **GRANTED**. Plaintiffs shall have 60 days from the date of this order to propound to Defendants ten (10) interrogatories and twenty (20) request for production and to take three (3) depositions of no more than four hours each, all on issues relevant to the question of personal jurisdiction.

SIGNED this 22nd day of June, 2012.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE